### BARLOW v. CRUSE et al.
### No. 2709.

Court of Civil Appeals of Texas. Beaumont.
March 7, 1935.

Norman, Daniel & Williams and R. J. Jones, all of Houston, for appellant.

F. M. Barler and Browder & Dippel, all of Cold Springs, for appellees.

O'QUINN, Justice.

Appellant was plaintiff and appellees were defendants below. We shall refer to them as plaintiff and defendants.

Plaintiff brought this suit in the district court of San Jacinto county against defendants Mrs. Ava Cruse and William McMurrey for performance of an alleged written contract. The alleged contract was set out in substance with great particularity. It was alleged that the contract was executed in triplicate, and that same was placed with defendant William McMurrey to be deposited in escrow with the People's State Bank of Cold Springs, San Jacinto county, Tex. That such deposit was never made and that plaintiff was unable to locate the contract and gave defendants notice that if they did not produce same, secondary evidence of its contents would be offered on the trial. The prayer was for partition of the property involved, judgment for such damages as might be shown by plaintiff, and for general relief.

Defendant Mrs. Ava Cruse answered by general demurrer, general denial, and a plea of not guilty.

Defendant William McMurrey answered by disclaimer of any claim, right, or title in or to the premises described in plaintiff's petition.

The case was tried to the court without the aid of a jury, and judgment rendered that plaintiff take nothing by his suit, and that defendants go without day and recover their costs. This appeal is from that judgment.

It appears from the record that on May 25, 1925, Mrs. Ava Cruse conveyed 1,200 acres of land (sections 101 and 102 H. & T. C. Ry. surveys situated partly in San Jacinto and partly in Liberty counties) to plaintiff, Barlow, for which he executed his six certain vendor lien notes, each for the sum of $907.50, bearing 6 per cent. interest, payable the first six months after date, and one payable on each six months thereafter until the whole were paid. These notes reserved the vendor's lien to secure their payment, and contained the usual acceleration clause as to payments. At said time plaintiff, Barlow, also executed a deed of trust covering the land conveyed further securing the payment of said notes, with power of sale in the event plaintiff did not fully discharge the debt. William McMurrey was named trustee. The deed of trust also contained the acceleration clause as to pay-

ments becoming due. The first note was paid when due. No further payments of either principal or interest were made. On April 30, 1930, the notes and lien were duly extended to be due and payable on June 1, 1930; December 1, 1930; June 1, 1931; December 1, 1931; and June 1, 1932, respectively. After this, no further payments were made by Barlow. At the request of Mrs. Cruse, the trustee, William McMurrey, advertised the land to be sold, the sale to take place June 7, 1932. On that date plaintiff, Barlow, secured a writ of injunction from the judge of the district court of San Jacinto county to prevent the sale. When the writ was served, Barlow and his attorney went to the office of the trustee, William McMurrey, who was an attorney and who regularly represented Mrs. Cruse, to discuss a compromise of the matter. After some discussion, an agreement was reached, McMurrey acting as attorney for Mrs. Cruse, who was not present and knew nothing of the matter, that the injunction would be dismissed, sale of the land made by the trustee, the land to be bought in by Mrs. Cruse, she to hold the title in trust for all parties interested; that after the trustee's sale of the land, Mrs. Cruse would lease it for oil purposes for $2.50 per acre, or the sum of $3,000, there being an offer from a third party to pay that sum in cash for a twelve months' lease on the land, with a rental of $1 per acre, or $1,200 per year for deferred development; that, with the lease money, Mrs. Cruse would pay off delinquent taxes due on the land to the amount of some $1,700; and then the property was to be divided equally among the three of them, that is, one-third to Barlow, one-third to McMurrey, and one-third to Mrs. Cruse; that would have given each of them 400 acres of the land, and one-third of the lease money left after paying the delinquent taxes, and also the agreement provided for division of any rentals, or lease incomes in the same proportion. After Barlow and his attorney, and the trustee, McMurrey, acting as attorney for Mrs. Cruse, who was not present, and who was not consulted in the negotiation looking to the making of such agreement or contract, had agreed as to the matter as above indicated, the agreement was reduced to writing and signed by the parties, that is, by Barlow and McMurrey. Mrs. Cruse lived at Cleveland in Liberty county, Tex., but at the time was in Cold Springs, San Jacinto county, at the home of William McMurrey. McMurrey then sent the papers to Mrs. Cruse by Mrs. Lucy McMurrey, the district clerk of

San Jacinto county, who told Mrs. Cruse that Judge McMurrey said to sign and acknowledge same, which she did without reading the document. After this, on the same day, Mr. Jones, attorney for Barlow, and Judge McMurrey, for himself and as attorney for Mrs. Cruse, drew up an agreed order for the district judge to dismiss the injunction suit, and carried same to Conroe, Montgomery county, where same was presented to the judge and he granted the request to dismiss and ordered his decree of dismissal to be entered in the minutes of the district court which was done the same day. Mrs. Lucy McMurrey did not carry the papers signed by Mrs. Cruse back to Judge McMurrey, but left them with Mrs. Cruse. Plaintiff says that the contract when executed was to be delivered to Judge McMurrey and by him deposited in escrow with the People's State Bank of Cold Springs, but that it was not so deposited, and that he could not find the contract, and that defendant did not produce it. Mrs. Ava Cruse testified that she signed the documents and acknowledged them, but that after Mrs. Lucy McMurrey, who took her acknowledgment, left, she read the papers and found that her attorney had provided in the contract that she was to give him one-third of her land and one-third of what was left of the lease money after paying the delinquent taxes on the land, and that that made her mad; that she had not been consulted about the matter and had made no such agreement, and that she took the papers to Judge McMurrey's office and tore them up and throwed the pieces in the stove; that they were not delivered to Judge McMurrey to be given to plaintiff or to be deposited in the bank, but that she, not having agreed to the terms of the alleged contract when she became acquainted with its terms, refused to accept it and tore it up. We will add that the land was sold on June 7, 1932, as advertised, and bought in by Mrs. Cruse. She then leased the land for approximately $3,000 in cash. Then she paid the delinquent taxes in the sum of about $1,700 that had accrued while the land was owned by plaintiff, Barlow. This suit for specific performance of the alleged contract above stated was filed by plaintiff on May 2, 1934, some two years later.

The court filed his findings of fact and conclusions of law. There is also in the record a full and complete statement of facts agreed to by the parties and approved by the court. On the evidence, the court found that there was no contract because Mrs.

Cruse had not assented to the terms of the alleged contract, and based his judgment on the ground that the minds of the parties had never met and so there was no contract upon which plaintiff could recover.

Plaintiff assigns error against the admission of the testimony of Mrs. Cruse because her answer was not sworn to, that is, she did not answer by sworn plea of non est factum, and hence her testimony was not admissible and could not be considered by the court in arriving at his judgment.

If it should be said that it was error to admit Mrs. Cruse's testimony, still we think the judgment must be affirmed, and upon the conclusion of the court that the minds of the parties did not meet and so no contract resulted. The evidence offered by plaintiff, we think, showed this. Barlow and his attorney both testified to the agreement made by them with Judge McMurrey, attorney for Mrs. Cruse, in his office at Cold Springs. It is undisputed that Mrs. Cruse was not present and that she was not consulted or in any manner advised with relative to the agreement made by plaintiff and his attorney with Judge McMurrey, as attorney for Mrs. Cruse. Plaintiff used Judge McMurrey as a witness. He testified in some measure corroborating plaintiff as to the things done by them in making the agreement alleged, but in positive terms said that Mrs. Cruse refused to accept or to be bound by the agreement. He testified: "Well, as I recall the matter, we did negotiate an agreement similar to the one you set out in your pleadings, but Mrs. Cruse never did agree to it." And: "Now, wait— there was a negotiation there similar to what he sets out in his pleading, that it was to be divided into three parts, but Mrs. Cruse didn't agree to it." And: "Well, we negotiated the one—the Barlow agreement that we thought—that I thought we would go into was—

"Q. How was that? A. The one that I thought—that Dr. Barlow and I thought to get together on was—I wrote it out and sent it to the house; Dr. Barlow, and I guess she, signed it; I can't remember the details. So when I sent it to the house and she signed it up, she brought it on down to me and said she wouldn't agree to that.

"Q. Did Mrs. Cruse acknowledge it? A. I don't remember whether she did or not; she brought the papers back to me.

"Q. She brought them back personally? A. Yes, I think so.

"Q. How was that? A. I think so; she came back and refused to agree to the agreement."

And: "Q. Did you have any agreement on behalf of yourself, Dr. Barlow, and as attorney for Mrs. Cruse— A. Only the—

"Q. With reference to depositing these papers in the bank in escrow? A. Only the proposed agreement; Mrs. Cruse didn't agree to it.

"Q. Just a moment; answer my question, please, Judge. A. Yes.

"Q. You did have? A. Yes, sir, that was the understanding of what we should do with it.

"Q. With the papers? A. With the papers.

"Q. Did you ever deposit them in the bank? A. No, because Mrs. Cruse refused to carry out the agreement.

"Q. Mrs. Cruse refused to carry out the agreement. A. Yes, she refused to agree to it.

"Q. What became of those contracts? A. I don't know."

So, it is seen that plaintiff, by his own witness, clearly shows that Mrs. Cruse was not present at the time the agreement was made between plaintiff and the witness, attorney for Mrs. Cruse, and that she was not consulted in the making of the contract; that, although she signed and acknowledged the agreement, that she, upon reading same, refused to accept it and went to her attorney and told him she would not agree to it, and did not deliver it to him for any purpose; that her attorney did not put the papers in the bank for the reason that she refused to agree to the terms of the agreement embodied in same, and refused to deliver the papers to said attorney. Certainly, under the evidence of plaintiff, no contract was shown, and the court did not err in so holding.

The judgment should be affirmed and it is so ordered.

Affirmed.